**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-00670-CMA-NYW

MONICA BARAY,

      Plaintiff,

v.

JACOB PAUL GALLAGHER, in his official and individual capacities;
SHERIFF BRETT L. POWELL, in his official and individual capacities; and
BOARD OF COUNTY COMMISSIONERS, LOGAN COUNTY, COLORADO,

      Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Nina Y. Wang

      This civil action is before the court on Defendants Sheriff Brett L. Powell ("Defendant Powell" or "Sheriff Powell") and Board of County Commissioners, Logan County, Colorado ("BOCC") (collectively, "County Defendants") Motion to Dismiss. [#27, filed July 6, 2015]. This matter was referred to this Magistrate Judge pursuant to the Order Referring Case dated April 7, 2015 [#8] and the memorandum dated July 8, 2015 [#28]. After carefully considering the Motion and related briefing, the entire case file, and applicable case law, I respectfully RECOMMEND that the Motion to Dismiss be GRANTED for the following reasons.

**BACKGROUND**

      Plaintiff Monica Baray filed this lawsuit on March 31, 2015, pursuant to 42 U.S.C. § 1983, naming Defendant Jacob Paul Gallagher, Sheriff Powell, and Logan

County, Colorado as defendants and asserting various constitutional violations and state law claims arising out of the sexual battery and rape she endured at the hands of Defendant Gallagher between April and June 2013 while in the custody of the Logan County Detention Center ("LCDC").[1]  [#1]  On June 22, 2015, Plaintiff filed an Amended Complaint replacing Logan County, Colorado with the BOCC, omitting the state law claims, and asserting the following constitutional violations: (1) Eighth Amendment and Fourteenth Amendment – Cruel and Unusual Punishment, as to Defendants Gallagher and Powell; (2) Fourteenth Amendment Substantive Due Process – Invasion of Bodily Integrity, as to Defendants Gallagher and Powell; (3) Fourteenth Amendment Substantive Due Process – Failure to Protect, as to Defendant Powell; (4) Fourteenth Amendment Substantive Due Process – Danger Creation, as to Defendant Powell; (5) Fourteenth Amendment Substantive Due Process – Failure to Train or Supervise, as to Defendant Powell; and (6) *Monell* Liability as to Defendants Powell and BOCC.[2]  [#24].

---

[1] Defendant Gallagher is separately represented, is not a party to the instant Motion to Dismiss, and has not filed a motion to dismiss on his own behalf.  On July 6, 2015, Defendant Gallagher through his attorney filed an Answer to the Amended Complaint. [#26].

[2] While not entirely clear from the Amended Complaint, it appears that Plaintiff is proceeding against Defendant Powell in his individual capacity for all claims except for her Fifth Claim for Relief.  [#27 at ¶ 87].  A suit against a government official in his capacity is simply "another way of pleading an action against an entity of which an officer is an agent." *McDonald v. Wise*, 769 F.3d 1202, 1215 (10th Cir. 2014) (quoting *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690 n. 55 (1978)).  Accordingly, the court considers Defendant BOCC and Defendant Powell, in his official capacity, one and the same for the purposes of determining liability for Ms. Baray's claim premised on *Monell* liability.  *See Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 n. 2 (10th Cir. 1998) (an official capacity claim is the same as a suit against the municipal entity; court therefore referred to suit against county and official capacity suit against sheriff as suit against the county).  To the extent that Plaintiff is proceeding against

Plaintiff seeks declaratory and injunctive relief, equitable relief, "all economic damages on all claims allowed by law," "compensatory and consequential" damages, and punitive damages. [*Id.* at 14-15]. In seeking this relief, Ms. Baray does not identify from whom, and in what capacity, she believes the separate Defendants are liable. [*Id.*]

The following allegations are taken from the Amended Complaint and considered true for the purposes of this Recommendation. Plaintiff entered the custody of Sheriff Powell and was detained at LCDC beginning in late 2012. [#24 at ¶ 3]. Defendant Gallagher, a detention deputy at LCDC, repeatedly raped Plaintiff between April 2013 and June 2013. [*Id.*] Defendant Gallagher was arrested on July 1, 2013 and charged with "violations of C.R.S. 18-7-701(1),(3), sexual conduct in a penal institution involving sexual intrusion or penetration, a class 5 felony; C.R.S. 18-7-701(1),(4), sexual conduct in a penal institution consisting of sexual contact, a class 6 felony; C.R.S. 18-3-404(1)(f), unlawful sexual contact with a victim in custody, a class 1 misdemeanor; and C.R.S. 18-8-404, first degree official misconduct, a class 2 misdemeanor." [*Id.* at ¶ 4]. Defendant Gallagher subsequently entered a guilty plea to violating Colo. Rev. Stat. 18-7-701(1), 4(a), "sexual conduct in a penal institution consisting of sexual contact, a class 6 felony." [*Id.* at ¶ 5]. Plaintiff alleges that Defendant Gallagher is responsible for sexually assaulting other women detained in Logan County facilities, "whom he was responsible for guarding prior to or in the same time frame Gallagher assaulted Ms. Baray." [*Id.* at ¶ 15]. Plaintiff further alleges that Defendant Powell "knew or should have known that those previous assaults by Gallagher had occurred and were

Defendant Powell in his official capacity for any other claim, the more appropriate defendant for such claims is Defendant BOCC.

continuing to occur," and that Defendant Powell "failed to take either prompt or effective action to remedy the problem." [*Id.*at ¶¶ 17, 18].

The County Defendants waived service, *see* [#16, #18], and filed the instant Motion to Dismiss as to all claims on July 6, 2015. [#27].  In the Motion to Dismiss, the County Defendants contend that Plaintiff has failed to state a cognizable claim.  [*Id.*]  On July 31, 2015, this court held a Scheduling Conference and entered a Scheduling Order.  [#30, #31].  Pursuant to the request for and grant of an extension, Plaintiff filed a Response to the Motion to Dismiss on August 31, 2015 [#35], and the County Defendants filed a Reply on September 17, 2015.  [#36].  The matter is now ripe for review.

## STANDARD OF REVIEW

The County Defendants move for dismissal of all claims asserted against them under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [#27].  Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Generally, a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the Complaint.  *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007).  A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted).  "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.*  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

### I.   Applicable Constitutional Framework

Before considering whether Plaintiff states a cognizable claim against Sheriff Powell in his individual capacity, or Sheriff Powell in his official capacity and/or the BOCC under a theory of municipal liability, the court first considers the appropriate constitutional framework.  Ms. Baray asserts that Defendant Powell violated her Eighth and Fourteenth Amendment rights by employing Defendant Gallagher in the first instance, maintaining his employment, failing to protect her from Defendant Gallagher,

and generally for allowing Defendant Gallagher to assault her.[3]   Despite how Plaintiff

has styled her claims, it is clear that the appropriate constitutional framework for this

action is under the Eighth Amendment, rather than the Fourteenth Amendment.   *See*

*Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2012); *Hostetler v. Green*, 323 F. App'x

653, 659 (10th Cir. 2009) (applying "an analysis identical to that applied in Eighth

Amendment cases brought under § 1983" to pretrial detainee's substantive due process

claim that her jailer acted with deliberate indifference in allowing male inmate to enter

her cell where he sexually assaulted her).   While "the touchstone of due process is

protection of the individual against arbitrary action of government...." *County of*

*Sacramento v. Lewis,* 523 U.S. 833, 845 (1998) (quotation omitted), the Due Process

Clause "does not transform every tort committed by a state actor into a constitutional

violation." *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 202

(1989).   "Where a particular Amendment 'provides an explicit textual source of

constitutional protection' against a particular sort of government behavior, 'that

Amendment, not the more generalized notion of substantive due process, must be the

guide for analyzing these claims.'" *Albright v. Oliver,* 510 U.S. 266, 273 (1994)

(quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)).   Accordingly, Plaintiff's

Fourteenth Amendment claims (claim 1:  cruel and unusual punishment; claim 2:

invasion of bodily integrity; claim 3:  failure to protect; claim 4:  danger creation; claim 5:

---

[3] Ms. Baray fails to specifically identify whether her *Monell* claim for municipal liability against Defendant BOCC is based on the Eighth and/or the Fourteenth Amendment, and accordingly, this court assumes that she is attempting to assert municipal liability under both constitutional amendments.

failure to train or supervise) are better addressed in the context of an Eighth Amendment violation.[4]

An "inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards." *Hovater v. Robinson,* 1 F.3d 1063, 1068 (10th Cir. 1993). Indeed, "a prison official's deliberate indifference to sexual abuse by prison employees violates the Eighth Amendment." *See Tafoya,* 516 F.3d at 916; *see also Ortiz v. Jordan,* 562 U.S. 180, 131 S.Ct. 884, 892–93 (2011). For the purposes of this Recommendation, I find that Ms. Baray has sufficiently alleged that Defendant Gallagher violated her constitutional rights. Therefore, this court proceeds to the next inquiry, *i.e.,* whether Plaintiff has sufficiently stated a claim that either Defendant Powell, as Defendant Gallagher's supervisor (in his individual capacity), or the BOCC can be liable for the violation of her Eighth Amendment right against cruel and unusual punishment arising from her sexual assault.

## II.   Defendant Powell Acting in his Individual Capacity

### A.   Supervisory Liability

#### 1.   Standard of Review

Section 1983 allows an injured person to seek damages for the violation of her federal rights against a person acting under color of state law, in his individual capacity. *See* 42 U.S.C. § 1983; *see also West v. Atkins,* 487 U.S. 42, 48 (1988). Vicarious or

---

[4]   Although Defendant Powell recognizes that Plaintiff has asserted an Eighth Amendment claim for cruel and unusual punishment against him, *see* [#27 at 2], he does not specifically address the specific constitutional framework in the Motion to Dismiss. He appears to assert that his arguments apply equally to any claim asserted by Plaintiff.   [*Id.* at 13 n.2].

strict liability of a supervisor is inapplicable for § 1983 claims. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948, 1949 (2009); *Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008). It is well-settled that "[a] defendant cannot be liable under § 1983 unless personally involved in the deprivation." *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (citation omitted).

The lack of vicarious liability, however, is not equivalent to the lack of supervisory liability and the requirement for personal involvement is not equated to direct involvement. Prior to *Iqbal*, a supervisor could be held liable in his personal capacity without "physically placing hands" on the plaintiff. *See Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (citations omitted). Instead, a plaintiff "must allege an affirmative link between the alleged constitutional violation and the specific individual's involvement in that violation." *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1156-57 (10th Cir. 2001). Over time, the Tenth Circuit came to interpret the "affirmative link" to require three elements: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind. *Dodds*, 614 F.3d at 1195.

To establish personal involvement, the plaintiff must show that the supervisor actively participated in or acquiesced to the constitutional violation. *Id.* For instance, the following could each constitute sufficient personal involvement: a defendant-supervisor's exercise of control or direction over the constitutional violation; failure to supervise; knowledge of the constitutional violation and acquiescence to it; or promulgation, creation, implementation, or utilization of a policy that caused a deprivation of plaintiff's rights. *Id.* Where personal participation is lacking, the plaintiff

must allege the official acted knowingly or with deliberate indifference in permitting the violative conduct, *i.e.* that the official knew of and disregarded an excessive risk to inmate health or safety.  Then, the plaintiff has to demonstrate that there was a causal connection and a culpable state of mind, *i.e.*, "the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights."  *Id.* at 1195-96.

The *Dodds* Court observed that *Iqbal* called into question whether supervisory liability without direct participation continued to be viable.  *Id.* at 1196.  As the County Defendants concede, the Tenth Circuit has neither eschewed supervisory liability in its entirety nor defined the specific, stricter contours for supervisory liability. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013).  But one thing is clear, any surviving supervisory liability for sexual assault of inmates requires that the defendant-supervisor "knows of and disregards an excessive risk to inmate health or safety."  *See Tafoya*, 516 F.3d at 916 (citation omitted).  Accordingly, Ms. Baray must allege that Defendant Powell was actually aware of facts from which he could draw an inference that a substantial risk of serious harm existed, and then that he drew the inference.  *Id.*

### 2.   Application

In her Amended Complaint, Plaintiff alleges the following:

While Plaintiff Monica Baray was an inmate in the Logan County Detention Center ("LCDC") in Sterling, Colorado, she was subjected to repeated sexual battery and forcible rape at the hands of Defendant Gallagher while he was on duty as a Logan County Sheriff's Office ("LCSO") detention deputy assigned to guard LCDC inmates like Plaintiff.

Plaintiff Baray was subjected to this sexual contact with Defendant Gallagher at LCDC from some time in April, 2013 through approximately June 28, 2013.

Defendant Gallagher committed similar sexual assaults on other women in Logan County facilities whom he was responsible for guarding prior to or in the same time frame Gallagher assaulted Ms. Baray.

Defendant Powell exhibited deliberate indifference to the substantial risk of harm inflicted upon Ms. Baray, and other women in LCSO/LCDC custody and in Logan County facilities, by employing and continuing to employ Defendant Gallagher despite the known risk of substantial harm Defendant Gallagher posed to women in custody, including Ms. Baray.

[#24 at ¶¶ 13-15, 29].   While Ms. Baray clearly states a cognizable constitutional violation on the part of Defendant Gallagher, this court respectfully concludes that these same allegations are insufficient to state a claim against Defendant Powell in his individual capacity, based on a theory of supervisory liability or otherwise.   Plaintiff fails to aver specific facts to establish Powell's involvement, knowledge, and state of mind with regard to the unconstitutional conduct.   For instance, Plaintiff asserts that Defendant Powell is liable for the constitutional violation because he allowed Defendant Gallagher to remain employed at LCDC, but Plaintiff does not allege how Defendant Powell knew Defendant Gallagher posed a risk, either to her or to female inmates generally.   [#24].

Plaintiff alleges for the first time in her Response:

[T]here were a number of sexual assault incidents in which Defendant Gallagher violated Ms. Baray's constitutional rights, including in which a control room sink was broken. There were also rumors regarding Defendant Gallagher receiving oral sex from another inmate. The story of the broken sink and rumor of oral sex were both known to LCDC Deputy Parsons.

[#35 at 11].  First, as noted by the County Defendants, Plaintiff may not further amend her Complaint by alleging new facts in her Response to the Motion to Dismiss.  *See In re Qwest Communications Int'l., Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004). Second, and more critically, Plaintiff does not allege that <u>Defendant Powell</u> knew of Defendant Gallagher's unlawful conduct, let alone that he ignored the reports or failed to adequately investigate.  While Plaintiff is not required to allege that Defendant Powell had knowledge that she was specifically at risk or the nature of the particular risk, *see Tafoya,* 516 F.3d at 916, she must still allege that he personally had "knowledge of a substantial risk of serious harm."  *Id.*  Plaintiff alleges, again for the first time in her Response, that Deputy Deborah Parsons knew of the sexual contact between Plaintiff and Defendant Gallagher [#35 at 3]; that Deputy Parsons heard rumors of another inmate giving Defendant Gallagher oral sex, which prompted Deputy Tyler Hall to write a report on it [*id.*]; and that on June 28, 2013, "Deputy Parsons and LCDC Sergeant Garrett Krogmeier hid a video camera in the control room, which captured audio and video of Defendant Gallagher sexually assaulting Monica Baray."  [*Id.*]

Plaintiff contends that Defendant Powell is liable under a theory of supervisory liability because he "failed to investigate the rumor of another inmate giving Defendant Gallagher oral sex, despite that Deputy Tyler Hall wrote a report on it."  [#35 at 10]. However, even accepting the allegations first made in her Response, Plaintiff does not assert sufficient facts to establish that Defendant Powell was actually aware of facts from which he could draw an inference that a substantial risk of serious harm existed, and then that he drew the inference.  She does not allege that Deputy Parsons reported

the cause of the broken sink or the alleged rumors to Defendant Powell.  Similarly, there

are no allegations that the report written by Deputy Hall was provided to and/or

considered by Defendant Powell.  The knowledge of Deputy Parsons and Deputy Hall

cannot simply be imputed to Defendant Powell.  "It is not enough to establish that the

official should have known of the risk of harm."  *Barney v. Pulsipher*, 143 F.3d 1299,

1310 (10th Cir. 1998) (citation omitted).

Nor does Ms. Baray state facts that show that after being notified of the June 28

audio and video recording by Deputy Parsons and Sergeant Krogmeier,[5] Defendant

Powell disregarded the known risk and failed to take appropriate action.  In her

Amended Complaint, Plaintiff alleges that she was assaulted between "some time in

April, 2013 through approximately June 28, 2013."  [#24 at ¶ 14].  In addition, she

alleges that Defendant Gallagher was arrested on July 1, 2013.  [*Id.* at ¶ 4].

Finally, Plaintiff compares her pleading to that in *Wilson v. Montano*, 715 F. 3d

847, 857 (10th Cir. 2013), in which an arrestee asserted a § 1983 action against *inter

alia* the warden of a county detention center and a county sheriff, alleging that he was

unlawfully detained in violation of his constitutional right to a prompt probable cause

determination.  [#35 at 9].  This court does not find *Wilson* instructive in this action.  In

that proceeding, the court affirmed the denial of the warden's and sheriff's motion to

dismiss, finding that plaintiff's allegations that: (1) the warden failed to require the filing

of written complaints; (2) detainees, including plaintiff, were held at the center without

---

[5] The court assumes that Defendant Powell was informed of the audio and video recording immediately, but even that is not alleged in the Amended Complaint or the Response.  [#24, #35].

receiving prompt probable cause determinations; (3) on numerous occasions the facility held individuals for days and even weeks without law enforcement taking those individuals before a magistrate judge; and (4) the warden's and sheriff's failure to appropriately train their respective employees directly led to the violation of plaintiff's right to a prompt probable cause determination sufficiently alleged established policies or customs that led to the arrestee's constitutional injury. *Wilson*, 715 F.3d at 857-58.

Here, Plaintiff articulates no such specifics. Plaintiff asserts that the "sexual assaults could have been prevented if Sheriff Powell enacted a simple chaperone policy that requires at least two guards to be present at any time a male guard interacts with a female inmate" [#35 at 8-9]; but fails to allege the factual basis on which Defendant Powell knew or should have known there was need for such a policy. *Cf. Tafoya*, 516 F.3d at 917 (10th Cir. 2005) (in companion cases, the court referred to the "egregiously undisciplined behavior of the detention staff" summarized in an earlier opinion in concluding that the sheriff "was on notice of the dangerous conditions in the jail and was aware that his own indifference toward jail operations had contributed to those conditions," and given his knowledge, he "was under a duty not only to take reasonable measures to remedy the circumstances that directly led to the sexual assaults, but to cure his own lack of attention and unresponsiveness to inmate complaints and other indicators of serious problems with his detention staff."). Plaintiff has not alleged any notice given to Defendant Powell. Unlike the Amended Complaint, the allegations in *Wilson* demonstrate that an affirmative link existed between the constitutional deprivation and the warden's and sheriff' action or inaction. Because Plaintiff's

allegations offer only the recitation of the elements of supervisory liability, *see, e.g.,* *Iqbal*, 129 S. Ct. at 1949, I respectfully find that they are insufficient to state a claim for constitutional violations as to Defendant Powell in his individual capacity.

### B.    Qualified Immunity

In addition, the County Defendants assert that Defendant Powell is entitled to qualified immunity.   The doctrine of qualified immunity "shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (internal quotation marks omitted).   Qualified immunity is an affirmative defense to § 1983 liability (*see Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995)); once a defendant asserts the defense, the plaintiff must demonstrate that qualified immunity is not proper by showing that "(1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation." *DeSpain*, 264 F.3d at 971 (quoting *Baptiste*, 147 F.3d at 1255).

The County Defendants argue that post-*Iqbal,* "supervisor liability claims do not provide clearly established law on issues of personal participation necessary to constitute such claim or the *mens rea* necessary to establish the claim." [#27 at 12]. Having found that Plaintiff has failed to state a cognizable claim of an Eighth Amendment violation against Defendant Powell in his individual capacity, I respectfully

refrain from addressing the qualified immunity analysis.   *See Gehl Group v. Koby*, 63 F.3d 1528, 1533 (10th Cir.1995).

**III.    Municipal Liability**

As addressed above, Ms. Baray's § 1983 official capacity claim against Sheriff Powell is considered to be a claim for liability of the county, and the court therefore applies municipal liability law to that claim.   *See, e.g., Kentucky*, 473 U.S. at 165–67, n.14.  Liability of a county pursuant to § 1983 cannot lie under the theory of *respondeat superior.    Monell,* 436 U.S. at 694.   Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.*  Thus, a showing of municipal liability under § 1983, requires that plaintiff plead "1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged."  *Graves v. Thomas,* 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989)).   When claiming the violation resulted from a failure to act, the plaintiff must demonstrate the municipality's inaction was the result of "deliberate indifference."  *Id.*

In this Circuit, the following actions may constitute a municipal policy or custom:

(1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or

15

supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City,* 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks and citations omitted). Ms. Baray does not allege that a formal regulation or policy statement violated her constitutional rights; indeed, she concedes she does not "have the benefit of the actual written policies from any of the County Defendants." [#35 at 15]. She asserts instead that "*Bryson* factors (3), (4), and (5) are met." [*Id.*] This court begins with its consideration of the fifth *Bryson* factor first.

Plaintiff avers that Defendant Powell "failed to properly hire, train, supervise, and/or discipline his detention deputies regarding the protection of women in custody," and the "inadequate hiring, training, and/or supervision provided by Defendant Powell results from a conscious or deliberate choice to follow a course of action from among various alternatives available to him." [#24 at ¶¶ 75, 76]. In instances, such as here, where the plaintiff has not pled the existence of an official municipal policy that violates federal law, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Barney*, 143 F.3d at 1307 (quoting *Board of County Comm'rs v. Brown,* 520 U.S. 397, 403 (1997)). To prevail on a claim for municipal liability based on a policy of inadequate training requires a plaintiff to allege that the municipality deliberately or consciously chose not to provide certain training or supervision. *Id.* Plaintiff may allege deliberate indifference by showing that the municipality had actual or constructive notice that its action or failure to act was "substantially certain to result in a constitutional violation," and it consciously or deliberately chose to disregard the risk of harm. *Id.* at 1307-

08.   Often, the plaintiff can establish notice by alleging the existence of a pattern of tortious conduct; and in a "narrow range of circumstances," notice may be established absent a pattern of unconstitutional behavior "if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations." *Id.*

Similarly, in reviewing a claim for municipal liability for inadequate hiring decisions, "courts must take even greater care to adhere to stringent culpability and causation standards, and carefully test the link between the policymaker's hiring decision and the particular injury alleged." *Barney*, 143 F.3d at 1308 (citation and internal quotation marks omitted).  The mere showing "that a municipal officer engaged in less than careful scrutiny of an applicant resulting in a generalized risk of harm is not enough to meet the rigorous requirements of deliberate indifference." *Id.*

Plaintiff asserts that "Sheriff Powell, by and through his official duties within Logan County, proximately caused an unconstitutional invasion of Ms. Baray's bodily integrity, as well as that of other women in custody, by failing to implement practices, policies, and procedures that protect women in custody [from his deputies]." [#24 at ¶ 57].  Plaintiff avers at the end of each claim, "[s]uch policies, as well as Defendant Powell's actions and inactions, violated Ms. Baray's substantive due process right [ ] under the Fourteenth Amendment to the United States Constitution." [*Id.* at ¶¶ 47, 58, 71, 83].  Yet, she does not identify an informal regulation or policy statement or widespread custom at LCDC pertinent to the claims raised in this litigation; she does not

aver Defendant Powell knew of the risk to her personally or to women generally, or otherwise describe a culpable state of mind; and she does not provide factual allegations to support the necessary causal connection. [#24]. *Cf. Keith*, 707 F.3d at 1187-89 (affirming denial of qualified immunity to prison warden in light of female prisoner's allegations that the warden "was responsible for managing [the prison] and knew about multiple instances of sexual misconduct at [the prison] over a period of years, inconsistently disciplined corrections officers who engaged in prohibited sexual conduct with inmates and thus purportedly tolerated at least an informal policy which permitted sexual contact between prison staff and inmates," and an audit report attached to the complaint that contained multiple findings regarding the situation at the prison during and subsequent to prisoner's incarceration).

As to the third and fourth *Bryson* factors, Plaintiff does not allege that Defendant Powell affirmatively rendered a decision, or ratified the decision of a subordinate, to which the alleged injury may be linked.  Instead, Plaintiff seems to suggest that "the need for scrutiny in hiring and specialized training, supervision, and discipline regarding sex assaults of women in custody is so obvious," as to hold Defendant Powell liable for a constitutional violation because the assault occurred under his supervision.  [#24 at ¶ 77].  Regrettably for Plaintiff, such a concept is precisely precluded by governing law. Moreover, the Tenth Circuit has opined, "we are not persuaded that a plainly obvious consequence of a deficient training program would be the sexual assault of inmates. Specific or extensive training hardly seems necessary for a jailer to know that sexually

assaulting inmates is inappropriate behavior." *Barney*, 143 F.3d at 1308 (citation omitted). Ms. Baray simply does not satisfy her pleading burden.

For these reasons, I respectfully find that Plaintiff has not stated a cognizable constitutional claim as to municipal liability.

**CONCLUSION**

For the forgoing reasons, I respectfully **RECOMMEND** that:

(1)     The County Defendants' Motion to Dismiss [#27] be **GRANTED;** and

(2)     All claims against Defendant Sheriff Brett L. Powell and Defendant Board of County Commissioners of Logan County, Colorado be **DISMISSED WITHOUT PREJUDICE** from this action.[6]

---

[6] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122

DATED: December 7, 2015                BY THE COURT:

                                            s/Nina Y. Wang
                                            United States Magistrate Judge

---

(10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).